**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRUCE A.S., | : | CIVIL ACTION |
|        Plaintiff, | : | |
|     v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
|        Defendant. | : | NO. 25-2847 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                         May 29, 2026

Bruce A. S. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has filed a reply brief.  For the reasons set forth below, Plaintiff's request for review is granted.

## I.      PROCEDURAL HISTORY[1]

On March 11, 2023, Plaintiff applied for DIB and SSI, alleging that his disability commenced on August 16, 2021, based on physical and mental impairments.  R. 10.  His claims were denied initially on June 12, 2023, and upon reconsideration, on October 25, 2023, so Plaintiff requested a hearing.  R. 10.  On June 20, 2024, Plaintiff, represented by counsel, and vocational expert Domonique Warner ("the VE"), testified telephonically before Administrative Law Judge Eric Borda ("the ALJ").  R. 10.  On August 14, 2024, the ALJ, using the sequential evaluation

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review by Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record ("R.").

process for disability,[2] issued an unfavorable decision. R. 7-19. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on April 23, 2025, making the ALJ's findings the final determination of the Commissioner. R. 1-6. Plaintiff seeks judicial review, and the parties consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

### A.    Personal History

Plaintiff, born on September 25, 1988, was 32 years old on his alleged disability onset date and 35 years old at the time of the administrative hearing. R. 38. He has a high school diploma. *Id.* Plaintiff does not have a driver's license and, therefore, does not drive. *Id.* He lives with his boyfriend and receives food stamps. R. 48.

### B.    Plaintiff's Testimony

Plaintiff testified that he last worked on August 16, 2021. R. 30. Prior to ceasing work, he

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

2

was an overnight manager at Walgreens; his responsibilities included counting money, unloading trucks, stocking shelves, and supervising one cashier.  R. 39.  Plaintiff was terminated after he made errors on paperwork and failed to accurately count the total amount of cash on several occasions, which he attributed to difficulties concentrating.  *Id.*  He has worked at CVS in a similar role.  R. 40.  Plaintiff worked at HomeGoods for only four hours before quitting because he was nervous and stressed.  R. 38.

Plaintiff also testified about his mental health symptoms.  He experiences severe Attention-Deficit Hyperactive Disorder ("ADHD")[3] symptoms, particularly difficulty concentrating.  R. 40. He was also diagnosed with anxiety and depression.  R. 40, 42.  Plaintiff does not like being in public places, including grocery stores, for extended periods; he avoids large crowds.  R. 40.  He exhibits mood swings, becomes "grouchy," and snaps at others, but later cries because he feels remorse.  *Id.*  In a crowded store, Plaintiff feels overwhelmed, irritated, and nervous.  *Id.*

Plaintiff testified that he contracts Methicillin-Resistant Staphylococcus Aureus ("MRSA")[4] infections once or twice per month.  R. 40.  MRSA is highly contagious and causes lesions on his face and body.  *Id.*  Plaintiff testified that he uses an antibiotic cream and isolates himself for one to two weeks until the lesions disappear.  R. 42. The lesions are a nuisance; when they appear, Plaintiff develops a fever and becomes sleepy.  R. 40.

---

[3] "ADHD is a developmental disorder characterized by an ongoing pattern of one or more of the following types of symptoms:
- Inattention, such as having difficulty paying attention, keeping on task, or staying organized
- Hyperactivity, such as often moving around (including during inappropriate times), feeling restless, or talking excessively
- Impulsivity, such as interrupting, intruding on others, or having trouble waiting one's turn"

*Attention-Deficit/Hyperactivity Disorder (ADHD)*, National Institute of Health, https://www.nimh.nih.gov/health/topics/attention-deficit-hyperactivity-disorder-adhd (last visited April 24, 2026).

[4] "MRSA stands for methicillin-resistant Staphylococcus aureus. Patients with MRSA are infected with a strain of Staph aureus bacteria resistant to antibiotics known as beta-lactams, such as methicillin, amoxicillin and penicillin." *MRSA Infection*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/mrsa-infection (last visited Apr. 24, 2026).

Plaintiff testified that, in high school, he had only one teacher and struggled with reading and spelling. R. 41. He takes Quetiapine for anxiety and Zolpidem for insomnia, although he testified that the latter is ineffective approximately half the time. *Id.* He also takes BuSpar for anxiety and Concerta for ADHD. *Id.* Side effects of his medication are upset stomach and nausea. R. 41-42. Plaintiff does not attend therapy because he has been unable to find a provider who is accepting new patients. R. 42. Plaintiff's boyfriend owns the home they live in; he has no bills. R. 39-40. As a hobby, Plaintiff finds appliances and other items online, repairs and resells them. R. 39.

## C.    Vocational Testimony

The VE classified Plaintiff's past relevant work as a retail assistant manager, as skilled[5] work, normally performed at the light[6] level of exertion, but performed by Plaintiff at the heavy[7] level. R. 47-48. The ALJ asked the VE to consider a hypothetical individual having Plaintiff's age, education and vocational profile, with no exertional limitations, who can understand, remember and carry out simple instructions, handle occasional changes in the work setting, occasional incidental interaction with the public, occasional interaction with coworkers, and occasional over-the-shoulder interaction with supervisors. R. 48. The VE testified that, although such an individual would not be able to perform Plaintiff's past relevant work, they could perform

---

[5] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

the following three unskilled[8] jobs:   (1) commercial cleaner, heavy, 240,000 positions in the national economy; (2) car cleaner, medium,[9] 14,000 positions in the national economy; and (3) janitor, medium, 17,000 positions in the national economy.  R. 48-49.  The VE testified that an employer would tolerate no more than one absence per month and the employee being off task for no more than 10% of an eight-hour workday.  R. 48.

### III.   THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.   [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.

2.   [Plaintiff] has not engaged in substantial gainful activity since August 16, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.)*.

3.   [Plaintiff] has the following severe impairments: generalized anxiety disorder (GAD); social anxiety disorder; specific learning disorder in written expression, reading comprehension, and math; attention deficit hyperactivity disorder (ADHD); insomnia (20 CFR 404.1520(c) and 416.920(c)).

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, remember and carry out simple instructions; and can have only occasional changes in

---

[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a), 416.968(a).

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

the work setting; only occasional incidental interaction with the public; and only occasional contact with coworkers with no tandem tasks; with only occasional over the shoulder supervision tolerated. His time off task in addition to regular breaks would not exceed 10% of the workday, and his maximum absences would not exceed one absence [sic] per month.

6.    [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    [Plaintiff] was born on September 25, 1988 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from August 16, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 12-15, 17-18.

## IV.    DISCUSSION

A.    <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v.*

6

*Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

7

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process ("SEP"), the ALJ determined that, although Plaintiff could not perform his past relevant work, he could perform other unskilled jobs that exist in the national economy and, therefore, was not disabled.  R. 10-19.  Plaintiff disputes the ALJ's non-disability determination and argues that he committed reversible error by:  (1) improperly rejecting opinions of consultative examiner Sara Mix, Psy.D. ("Dr. Mix"); (2) failing to adequately evaluate Plaintiff's MRSA infections; and (3) failing to analyze Plaintiff's symptoms.  Pl. Br. at 3-12.  The Commissioner denies these assertions of error.  Resp. at 5-12.  This court finds merit in Plaintiff's argument that the ALJ erred in rejecting Dr. Mix's medical opinions, though the error was harmless.  Plaintiff's remaining arguments have merit inasmuch as they relate to the ALJ's failure to adequately evaluate significant evidence, including objective medical evidence and symptoms, regarding Plaintiff's MRSA infections.  This error was harmful.

1.   The ALJ Committed Harmless Error Regarding Dr. Mix's Medical Opinions

Plaintiff first argues that the ALJ erred by failing to provide a legitimate rationale for rejecting the medical opinions of consultative examiner Dr. Mix.  Specifically, Plaintiff contends

that the ALJ improperly rejected Dr. Mix's medical opinions by ignoring probative medical evidence that contradicts the ALJ's finding that the doctor's opinions were unsupported.  Pl. Br. at 5-7.  Plaintiff also argues that the ALJ's consistency analysis was erroneous because:  (1) the ALJ relied on evidence from a physical exam rather than psychiatric findings in the record, and (2) the ALJ failed to explain how the normal findings he cited undermine Dr. Mix's opinions.  Pl. Br. at 7-9.  While the ALJ committed legal errors in his supportability and consistency analyses, correcting them would not affect the outcome, hence the errors were harmless.

Dr. Mix rendered several opinions regarding Plaintiff's mental residual functional capacity. She opined that Plaintiff had mild[10] limitations in remembering simple instructions and moderate[11] limitations in carrying out simple instructions, making judgments on simple work-related decisions, and maintaining persistence and pace.  R. 423-425.  Dr. Mix also opined that Plaintiff had marked[12] limitations in interacting with the public, supervisors, and coworkers; responding appropriately to usual work situations and changes in a routine work setting; and in concentration, adaptation, and self-management.  *Id.*

The governing regulation states that an ALJ is only required to explicitly consider supportability and consistency when deciding whether a source's medical opinions are persuasive. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[13]  Supportability refers to the objective medical evidence and explanations the source himself or herself provides to justify the opinions.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Consistency asks how consistent the objective medical and

---

[10] When a Plaintiff has a mild limitation in an area, "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."  20 C.F.R 404, Subpart P, Appendix 1 § 12.00(F)(2)(c) ("Appendix 1 § 12.00(F)(2)(b)").

[11] When a Plaintiff has a moderate limitation in an area, "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  Appendix 1 § 12.00(F)(2)(c).

[12] When a Plaintiff has a marked limitation in an area, "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."  Appendix 1 § 12.00(F)(2)(d).

[13] Other relevant factors which may be considered are:  the source's relationship to the claimant, the source's specialization and other factors.  20 C.F.R. § 404.1520c(c)(3)-(5).

other evidence in the record is with the source's opinions.    20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### a.    The ALJ's Supportability Analysis is Erroneous

The ALJ committed legal error by ignoring the support Dr. Mix provided for her opinions, resulting in a factually erroneous supportability analysis.  The ALJ concluded that Dr. Mix's opinions were unpersuasive because they were unsupported, R. 17, which is false.  To justify her conclusions, Dr. Mix referenced Plaintiff's anxiety, mania, and ADHD symptoms.  R. 423-24.  The ALJ improperly ignored this probative, medical evidence. *See Adorno v. Shalala*, 40 F.3d 43, 38 (3d Cir. 1994) (holding that an ALJ may not ignore record evidence that supports a contrary conclusion).

### b.    The ALJ's Consistency Analysis is Erroneous

Plaintiff next argues that the ALJ erred because his consistency analysis compared Dr. Mix's psychiatric opinions with notes from a physical exam.  The ALJ cited evidence that Plaintiff had a normal, pleasant affect, normal behavior, and normal thought process during a physical exam conducted by Nurse Practitioner Wilburn.  R. 17, 563.  Though the evidence is from a physical exam, it is relevant to Plaintiff's psychiatric limitations and refutes some of Dr. Mix's opinions.  Normal, pleasant affect and normal behavior relate to Plaintiff's ability to appropriately interact with others and conform to behavioral norms.  This undermines Dr. Mix's opinion that Plaintiff has marked limitations in adaptation, self-management, and interacting with the public, supervisors and coworkers.  Normal thought process shows that Plaintiff can think in a coherent manner, which undermines Dr. Mix's opinion that Plaintiff has marked limitations in concentrating, and understanding and remembering complex instructions.  However, the evidence the ALJ cited was underinclusive as it did not address all of Dr. Mix's medical opinions, making

it difficult for the court to determine whether the ALJ properly rejected all of Dr. Mix's opinions for lack of consistency.

Plaintiff contends that the ALJ should have explained why the normal findings he cited contradicted Dr. Mix's opinions. Pl. Br. at 5-6. But the ALJ had no such obligation, and, in any event, the ALJ's explanation is sufficient to permit meaningful review. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (remanding because the ALJ's explanation was insufficient to allow meaningful judicial review). Evidence that Plaintiff exhibited a cooperative demeanor, an adequate manner of relating, fair grooming, a coherent and goal-directed thought process, appropriate eye contact, and clear sensorium,[14] R. 17, shows that Plaintiff has some ability to interact with others, care for himself, and think in a logically connected and consistent manner. This undermines Dr. Mix's opinions that Plaintiff was markedly limited in social interaction; adaptation; self-management; concentrating; understanding, remembering and carrying out complex instructions; and responding appropriately to usual work situations and changes in a routine work setting.

> c.   The ALJ's Errors Were Harmless

The ALJ's errors regarding Dr. Mix's medical opinions were harmless, because correcting them would not change the outcome. Social Security cases are subject to harmless error review. *See Rutherford*, 399 F.3d at 552-53 (remand is not required when the identified error would not affect the outcome of the case). RFC is the *most* an individual can do despite their limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An RFC assessment is not a medical opinion but rather a determination reserved to the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir.

---

[14] Sensorium is "the parts of the brain or the mind concerned with the reception and interpretation of sensory stimuli." *Sensorium*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sensorium (last visited Apr. 22, 2026).

2011). A reviewing court must examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence; remand is not required when, reviewing the record as a whole, correction of the ALJ's errors would not alter the outcome of the case. *See Rutherford*, 399 F.3d at 552-53.

The ALJ's RFC assessment includes several mental limitations providing that Plaintiff can: understand, remember, and carry out simple instructions; tolerate occasional changes in the work setting; have occasional, incidental interaction with the public; have occasional contact with coworkers, with no tandem tasks; receive occasional over-the-shoulder supervision; be off task for no more than 10% of the workday; and incur no more than one absence per month. R. 14-15.

Here, the ALJ's RFC assessment is supported by substantial evidence, to wit opinions of state agency evaluators, Drs. Kerry Vaughn Brace and Arlene I. Rattan. Drs. Brace and Rattan both opinioned that:

> [Plaintiff] is able to complete a normal workday and workweek without interruptions from psychologically based symptoms in settings that require understanding, remembering, and carrying out only short and simple instructions. [Plaintiff] is able to maintain socially appropriate behavior in settings not involving frequent or intensive interpersonal interactions. [Plaintiff] is able to function in settings not involving high levels of work pressure or frequent changes in routine.
> [Plaintiff] is able to meet the basic mental demands of production-oriented work despite the limitations resulting from the impairments. [Plaintiff] can understand, retain, and follow simple job instructions, i.e. perform/follow one and two step tasks/instructions.

R. 60, 79. Drs. Brace and Rattan also opined that Plaintiff was only moderately limited in maintaining attention and concentration for extended periods. R. 59, 79. The ALJ found these opinions persuasive, R. 16-17, and apparently adopted much of Drs. Brace and Rattan's opinions when he assessed Plaintiff's RFC. *See* R. 14-15.

Even if the ALJ had properly considered Dr. Mix's opinions for persuasiveness, he still would have had to compare Dr. Mix's opinions to those of Drs. Brace and Rattan, which are

12

consistent with each other but inconsistent with some of Dr. Mix's opinions.  Considering this inconsistency, the ALJ was not required to adopt Dr. Mix's opinions.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (an ALJ may choose whom to credit when there is a conflict in the evidence).  Consequently, remand is not necessary, because, even if the ALJ had properly considered Dr. Mix's medical opinions, it is likely that the ALJ would have credited Drs. Brace and Rattan's opinions, leading to the same limitations expressed in the RFC assessment. Accordingly, although the ALJ erred in analyzing Dr. Mix's medical opinions, that error is harmless as it would not have affected the outcome of the case. [15]

   2.   The ALJ Erred Regarding Plaintiff's MRSA Infections

Plaintiff next argues that the RFC assessment is not supported by substantial evidence, because therein the ALJ failed to account for his MRSA infections.  Pl.'s Br. at 9-11.  This argument has merit.  The ALJ failed to analyze what work-related limitations, if any, would result from Plaintiff's recurring MRSA infections.  The only time the ALJ mentioned or referenced Plaintiff's MRSA infections was at Step Two, when he determined that MRSA was not a severe impairment.  R. 13 ("[Plaintiff] testified that a few recurring MRSA spots are treated with an antibiotic cream.")  In doing so, the ALJ ignored objective medical evidence demonstrating that Plaintiff was diagnosed with and received treatment for MRSA infections in September 2022, February 2023, July 2023, January 2024, April 2024, and June 2024.  R. 462, 469, 473, 482, 563,

---

[15] Plaintiff also argues, without supporting authority, that he would have been found to meet Listing 12.06 based on Dr. Mix's opinions of marked limitations in three areas of functioning.  Pl.'s Br. at 9.  However, Dr. Mix provided only RFC findings, not paragraph B determinations.  R. 423-35.  That is, Dr. Mix's opinions do not translate to the paragraph B criteria. Although some categories in Dr. Mix's RFC evaluation form may relate to the paragraph B domains, her findings of mild, moderate, and marked limitations apply only to the RFC categories, not the paragraph B criteria.  R. 423-24;  *see* SSR 96-8p, *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.")  Accordingly, this argument fails.

588. This includes evidence that Plaintiff contracted MRSA twice in February 2023. R. 473, 482. Plaintiff also testified that he had an active MRSA infection at the time of the hearing. R. 43-44. Additionally, Plaintiff testified that these infections result in highly contagious lesions on various parts of his body, including his neck and face, requiring him to isolate for one to two weeks at a time. R. 43-44. Since the ALJ did not discuss this evidence, the court is not able to ascertain whether the ALJ evaluated the evidence regarding Plaintiff's recurring MRSA infections properly. *See Burnett*, 220 F.3d at 119-20 (remanding to allow the ALJ to discuss the evidence and provide adequate reasoning for his determination).

Had the ALJ considered the objective medical evidence and Plaintiff's testimony regarding MRSA, particularly Plaintiff's need to isolate for at least seven days or until his contagious lesions disappear, the ALJ may have found that Plaintiff would be absent from work for more than one day per month, which would be disabling. R. 48. Consequently, the case is remanded so that the ALJ can evaluate the evidence regarding Plaintiff's recurrent MRSA infections.

    3.   The ALJ Failed to Analyze Some of Plaintiff's Symptoms

Lastly, Plaintiff argues that the ALJ erred by failing to properly analyze all of his symptoms. Pl.'s Br. at 11-13. This argument has some merit. Symptoms are "the individual's own description or statement of his or her physical or mental impairment(s)." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *2. There is a two-step process for evaluating an individual's symptoms. *Id.* The first step is to determine whether the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. At this step, the ALJ must consider objective medical evidence, such as signs or laboratory findings, to establish the existence of an MDI that could reasonably be expected to produce the individual's alleged symptoms. *Id.* "If there is no medically determinable

14

impairment, or if there is a medically determinable impairment but the impairment(s) could not reasonably be expected to produce the individual's symptoms," the ALJ will not find that those symptoms affect an adult's ability to perform work-related activities. *Id.* at *4.

At the second step, the ALJ must evaluate the intensity and persistence of an individual's symptoms and determine the extent to which those symptoms limit the individual's ability to perform work-related activities. SSR 16-3p, *4. In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence; the individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.*

Although the ALJ discussed many of Plaintiff's symptoms, such as ADHD symptoms, difficulty with concentration, depression, anxiety, nervousness in public, temper, and difficulty interacting with others, R. 15, the ALJ failed to address Plaintiff's MRSA infections or any evidence concerning the contagious and recurring nature of the condition. *Id.* This harmful error began at step one of the symptom evaluation process, where the ALJ ignored objective medical evidence documenting Plaintiff's MRSA infections. R. 13. The record reflects at least six instances in which physicians at the Mazzoni Center diagnosed and treated Plaintiff's MRSA infections. R. 462, 469, 473, 482, 563, 588. The ALJ ignored this evidence and concluded that MRSA is not a medically determinable impairment in Plaintiff's case. R. 13. For these reasons, and those explained in the previous section, the case is remanded so that the ALJ can consider objective medical evidence and Plaintiff's testimony regarding his MRSA infections and their impact on his ability to work.

Accordingly, an implementing order and judgment will follow.

15